IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DONALD V. SNOWDEN, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 19-cv-01322-JPG ) ) |
| JEREMY HENNING, | ) ) |
| Defendant. | ) |

## **DEFENDANT HENNING'S MOTION TO DISMISS COUNT 1 OF THE COMPLAINT FOR FAILURE TO STATE A CLAIM and MEMORANDUM IN SUPPORT**

Defendant, Jeremy Henning, by and through his attorneys, Steven D. Weinhoeft, United States Attorney for the Southern District of Illinois and Suzanne M. Garrison, Assistant United States Attorney, moves to dismiss Count 1 of the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

## INTRODUCTION

Plaintiff, Donald V. Snowden, is a federal detainee by virtue of a pending methamphetamine distribution charge in *USA v. Snowden*, No. 19-cr-40081-JPG (S.D. Ill. 2019). Defendant Jeremy Henning is a Special Agent of the Drug Enforcement Administration ("DEA") who participated in the investigation of Plaintiff and in his subsequent arrest pursuant to a federal warrant. (Ex. 1). In this lawsuit, Plaintiff complains of the manner in which he was arrested, alleging that Agent Henning utilized excessive force. The Court has screened the complaint and has permitted two counts to proceed against Agent Henning as follows:

**Count 1:** Officer Henning subjected Plaintiff to the unauthorized use of force during his arrest at the Quality Inn Hotel on September 12, 2019, in violation of his rights under the Fourth and/or Fourteenth Amendments and *Bivens*. (Doc. 15, citing the Complaint pp. 9-10).

**Count 4:** Officer Henning committed battery against Plaintiff, in violation of Illinois state law. (Doc. 15, citing the Complaint at p. 12)[1].

---

[1] Count 4 is the subject of a separate, contemporaneously filed motion to substitute the United States for Agent Henning as defendant under the Federal Tort Claims Act. Should substitution occur, the United States does not waive its right to insist on the exhaustion of administrative remedies as a prerequisite to filing suit.

Count 1 is based upon the judicially created remedy of *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). Specifically, during screening, the Court found that, "Plaintiff's excessive force claim in Count 1 is properly brought under the Fourth Amendment, if the injuries he received were inflicted before any judicial determination of probable cause, or under the Fourteenth Amendment[2], if the injuries occurred after this judicial determination." (*See* Doc. 15 at 3, citing *Hill v. Murphy*, 785 F.3d 242 (7th Cir. 2005). The Court determined that Count 4, alleging the Illinois tort of battery, arises by virtue of this Court's supplemental jurisdiction. 28 U.S.C. § 1367(a).

Count 1 should be dismissed because Plaintiff's claim against a federal officer for the use of excessive force in executing an arrest warrant issued following a finding of probable cause presents a new *Bivens* context and special factors counsel hesitation in expanding the judicially created remedy here. This case differs from *Bivens* in significant ways—testing the degree of force that can reasonably be used while making an arrest in the course of executing a lawful arrest warrant, rather than (as in *Bivens*) the question of whether a warrantless entry into a home and subsequent strip search are constitutional. The analysis required by *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017) demonstrates that extension of the *Bivens* remedy to an allegation of excessive force during the execution of an arrest warrant supported by a prior determination of probable cause is unwarranted, particularly in light of alternative remedies and processes.

---

[2] Defendant respectfully suggests that the analysis involves either the Fourth Amendment or the Fifth Amendment's Due Process Clause, rather than the Fourteenth Amendment. This is because the Fourteenth Amendment does not apply to federal actors. *See San Francisco Arts & Athletics Inc. v. United States Olympic Committee*, 483 U.S. 522, 542 n. 21 (1987). The distinction is immaterial. The Fifth Amendment and the Fourteenth Amendment typically are construed in *pari materia*. *See e.g. Bowles v. Willingham*, 321 U.S. 503 (1994)(noting that "the restraint imposed on the national government. . . . by the Fifth Amendment are no greater than those imposed on the States by the Fourteenth.") The Seventh Circuit has observed that, "The Fourth Amendment governs the period of confinement between arrest without a warrant and the preliminary hearing at which a determination of probable cause is made, while due process regulates the period of confinement after the initial determination of probable cause." *Villanova v. Abrams*, 972 F.2d 792, 797 (7th Cir. 1992). An exception to this general rule exists if there is an allegation that the proceeding is tainted (such as by fabricated evidence) resulting in a lack of probable cause. In such a case, the ensuing pretrial detention is analyzed under the Fourth Amendment. *Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 920 (2017).

## RULE 12(b)(6) STANDARDS

A motion to dismiss under Rule 12(b)(6) asks whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In reviewing the sufficiency of a complaint, the Court must accept all well-pled facts as true and draw all permissible inferences in favor of the plaintiff. *Active Disposal, Inc. v. City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011). The Court will not accept legal conclusions or conclusory allegations as sufficient to state a claim for relief. *McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011). Factual allegations must plausibly state an entitlement to relief "to a degree that rises above the speculative level." *Munson v. Gaetz*, 673 F.3d 630, 633 (7th Cir. 2012). This plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

In deciding a motion to dismiss under Rule 12(b)(6), "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Ordinarily, to the extent a motion filed under Rule 12(b)(6) presents matters outside of the pleadings which the Court opts to consider, the Court must treat the motion as one for summary judgment pursuant to Rules 12(d) and 56. However, in deciding a motion to dismiss, the Court may consider matters in the public record. *Palay v. United States*, 349 F.3d 418, 425 n. 5 (7th Cir.2003) (stating that "in resolving a motion to dismiss, the district court is entitled to take judicial notice of matters in the public record").

# THE COURT MUST CONDUCT THE TWO-PART ANALYSIS REQUIRED BY THE SUPREME COURT IN *ABBASI*

Title 42 U.S.C. § 1983, the statute that permits suits for money damages against state officials who violate constitutional rights, was enacted in 1871. There is no analogous statute for federal officials. In *Bivens,* however, the Supreme Court held that a warrantless arrest and search made without probable cause in plaintiff's home by federal agents acting under color of governmental authority, gave rise to a cause of action for money damages for violation of the Fourth Amendment against those agents in their individual capacities despite the absence of explicit statutory authorization for such suits. *Abbasi*, 137 S.Ct. at 1854; *Bivens*, 403 U.S. at 389. Greater detail about the precise nature of the claim in *Bivens* can be found in the lower court opinion:

> Plaintiff Webster Bivens in his complaint, filed pro se, alleges that six federal agents entered his apartment on November 26, 1965 without a search or arrest warrant. After conducting a search of the apartment the agents arrested plaintiff for a violation of the narcotics laws and placed him in manacles in the presence of his wife and children. The search and the arrest are alleged to have been conducted 'in an unreasonable manner.' Plaintiff was taken to the Federal Court Building in Brooklyn, and then to the Federal Narcotic Bureau, where he was interrogated, fingerprinted, photographed, subjected to search of his person, and booked. It appears that the complaint filed against plaintiff ultimately was dismissed by a United States Commissioner[3]. The events surrounding the search and arrest are said by plaintiff to have caused him 'great humiliation, embarrassment, and mental suffering,' and will continue to do so.

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 409 F.2d 718, 719 (2d Cir. 1969), rev'd, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971). The dismissal of the complaint by a Commissioner suggests that the arrest was unsupported by probable cause and the Supreme Court noted that it appeared that Bivens alleged in the complaint that the agents arrested him without probable cause[4]. The *Abbasi* Court observed that the claim the Supreme Court

---

3 The Federal Magistrates Act of 1968, Pub.L. No. 90–578, 82 Stat. 1107, codified as amended at 18 U.S.C. §§ 3401–3402; 28 U.S.C. §§ 631–39 (1988 & Supp. I 1989), abolished the office of United States commissioner and replaced it with a judicial officer serving directly below the level of the district court.
4 The Court noted, "Petitioner's complaint does not explicitly state that the agents had no probable cause for his

authorized in *Bivens* was "a claim against FBI agents for handcuffing a man in his own home without a warrant." *Abbasi*, 137 S. Ct. at 1860.

Since *Bivens*, the Supreme Court has recognized only two additional implied causes of actions for alleged constitutional violations. *Id.* at 1854–55 (citing *Davis v. Passman*, 442 U.S. 228 (1979) (authorizing an administrative assistant's suit against a Congressman for gender discrimination under the Fifth Amendment Due Process Clause, when Title VII as then written did not apply to Congressional employees); *Carlson v. Green*, 446 U.S. 14 (1980) (permitting a prisoner's estate to sue federal jailers for failure to provide adequate medical treatment for asthma under the Eighth Amendment). And in the forty years since *Carlson* was decided, the Supreme Court has "consistently refused to extend *Bivens* to any new context or new category of defendants," going as far as labeling any *Bivens* expansion a now "disfavored" judicial activity. Abbasi, 137 S. Ct. 1843 at 1857, citing *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 68 (2001) (refusing to allow *Bivens* remedy against private entity operating halfway house under contract with Bureau of Prisons). *See also Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020)(declining to extend *Bivens* to a cross-border shooting claim); *Minneci v. Pollard*, 132 S. Ct. 617, 622 (2012) (refusing to allow a *Bivens* remedy against employees of a privately operated facility housing federal prisoners); *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007) (refusing to allow a *Bivens* remedy for retaliating against the exercise of property ownership rights  In fact, the Supreme Court has gone so far as to observe that if "the Court's three *Bivens* cases [had] been ... decided today," it is doubtful that we would have reached the same result, *Abbasi*, 137 S.Ct., at 1856.

*Abbasi* outlines the two-step framework required to analyze whether a *Bivens* remedy is

---

arrest, but it does allege that the arrest was 'done unlawfully, unreasonably and contrary to law.' Petitioner's affidavit in support of his motion for summary judgment swears that the search was 'without cause, consent or warrant,' and that the arrest was 'without cause, reason or warrant.'" *Bivens*, 403 U.S. at 390, n. 1.

available against federal officials. A court must first consider whether a case presents a new *Bivens* context. 137 S.Ct. at 1859. A context is considered new if it "is different in a meaningful way from previous *Bivens* cases decided by this Court. ..." *Id.* "A claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized." *Hernandez*, 140 S.Ct. at 743. According to the Supreme Court, a case may differ in a meaningful way:

> because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Id.* at 1860.

If a claim against a federal official arises in a new *Bivens* context, a court must then conduct a special factors analysis to determine whether an action should proceed. *Id.* at 1857. Although the Court has not defined special factors, it explained "a factor must cause a court to hesitate before answering [whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed] in the affirmative." *Id.* at 1858. *Abbasi* explained that "[w]hen a party seeks to assert an implied cause of action under the Constitution itself," "separation-of-powers principles are or should be central to the analysis." *Id.* Relevant factors to consider include the "impact on governmental operations systemwide," "the burdens on Government employees who are sued personally," the regulatory authority of Congress in a context, and the existence of an "alternative remedial structure" in a case. *Id.* If a case presents a new *Bivens* context and special factors counsel against extending *Bivens* in the circumstances of the case, courts should not recognize a damages action under the Constitution. *Id.* at 1857.

**THIS CASE PRESENTS A NEW *BIVENS* CONTEXT**

The Seventh Circuit has recognized that since *Abbasi*, the *Bivens* framework has narrowed substantially to limit lawsuits against federal agents, and the court's "past pronouncements are thus not controlling." *White v. Sloop*, 772 F. App'x 334, 335 (7th Cir.), *cert. dismissed*, 140 S. Ct. 623, 205 L. Ed. 2d 381 (2019), citing *Vanderklok v. United States*, 868 F.3d 189, 199 (3d Cir. 2017) ("It is not enough to argue ... that First Amendment retaliation claims have been permitted under *Bivens* before. We must look at the issue anew.") No Supreme Court case recognizing an implied right of action exactly mirrors the facts and legal issues presented here. *See Abbasi*, 137 S. Ct. at 1859–60 (explaining that the comparison is to Supreme Court cases). Courts do not define a *Bivens* cause of action at the level of "the Fourth Amendment" or even at the level of "the unreasonable-searches-and-seizures clause." *Cantu v. Moody*, 933 F.3d 414, 422 (5th Cir. 2019) (arrestee's claim that federal officers falsified search warrant affidavits to induce prosecutors to charge him without any basis, which led to his unjustified detention, was not actionable under *Bivens*), citing *Meyer*, 510 U.S. 471, 484 n. 9. Instead of looking only to which constitutional amendment is cited, the court must assess "the constitutional *right* at issue" and the context in which the alleged violation arises. *Abbasi*, 137 S.Ct. at 1859–60 (emphasis added).

This case differs from *Bivens* primarily because the right to be free of unreasonable warrantless search and detention in one's own home and arrest in the absence of probable cause[5] (*Bivens*) is materially distinct from the right to be free of excessive force in the context of a lawful arrest in a public place pursuant to a warrant issued following a finding of probable cause. Defendant did not storm Plaintiff's home without a warrant or shackle him without probable cause. Plaintiff's arrest was lawful, Bivens' arrest and detention was not. Bivens stated a claim for false

---

[5] The complaint in *Bivens* alleged that "the arrest and search were effected without a warrant, and that unreasonable force was employed in making the arrest" and that "the arrest was made without probable cause." *Bivens*, 403 U.S. at 389.

7

arrest and a warrantless invasion of his home and search. Plaintiff cannot state a claim for false arrest, because the prior finding of probable cause precludes a § 1983 suit for false arrest. *See, e.g., Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir.2006). The only question in Plaintiff's case is whether the amount of force utilized in executing his lawful arrest was reasonable, an assessment Defendant had only seconds to make.

The distinctions between Plaintiff's case and *Bivens* are material. "[T]he Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest." *Gerstein v. Pugh*, 420 U.S. 103, 114 (1975). The Supreme Court has recognized the grand jury's singular role in finding the probable cause necessary to initiate a prosecution for a serious crime. *Kaley v. United States*, 571 U.S. 320, 328 (2014). An indictment returned by a properly constituted grand jury, conclusively determines the existence of probable cause" to believe the defendant perpetrated the offense alleged. *Gerstein,* 420 U.S. at 117, n. 19 (1975). If the person charged is not yet in custody, an indictment triggers "issuance of an arrest warrant without further inquiry" into the case's strength. *Id*. Accordingly, when a person is arrested on a warrant issued after the grand jury indictment, the arrest is pursuant to formal legal process. *Bianchi v. McQueen*, 818 F.3d 309, 321 (7th Cir. 2016). The grand jury's finding also plays a significant role in determining a defendant's eligibility for release before trial under the Bail Reform Act of 1984, 18 U.S.C. § 3141 et seq. *Kaley*, 571 U.S. at 329, n. 6. That statute creates a rebuttable presumption that a defendant is ineligible for bail if "there is probable cause to believe" she committed certain serious crimes. §§ 3142(e)(2)–(3), (f). As an individual arrested pursuant to warrant charged with a serious drug crime who was subject to the rebuttable presumption in favor of pretrial detention, Plaintiff is not similarly situated to Bivens. Plaintiff was a temporary pretrial detainee at the time of arrest, who was entitled to a detention hearing pursuant to § 3142, but not a determination of probable cause, like Bivens.

Recently several district courts have dismissed proposed *Bivens* claims against federal

agents, finding that excessive force claims following an arrest pursuant to warrant present a new context under *Bivens*. *Sosa v. Bustos*, No. 17 CIV. 417 (ER), 2020 WL 1940550, at *4 (S.D.N.Y. Apr. 22, 2020); *Martinez v. D'Agata*, No. 16 Civ. 44 (VB), 2019 WL 6895436 (S.D.N.Y. Dec. 18, 2019) and *Rivera v. Samilo*, 370 F. Supp. 3d 362 (E.D.N.Y. 2019). The courts in *Martinez* and *Rivera* reasoned that the right at issue in *Bivens* was primarily a privacy right, not a right to be free of excessive force. *Sosa*, 2020 WL 1940550 at *4. As such, they have found that excessive force claims present a new *Bivens* context [6]. *Id.* *See* also, *Style v. Mackey*, No. 17CV1691ENVSJB, 2020 WL 3055319, at *4 (E.D.N.Y. June 8, 2020)(declining to extend *Bivens* to a claim involving an arrest by a Deputy United States Marshal due to the claim's focus on the Seizure rather than the Search Clause of the Fourth Amendment). As in *Sosa*, *Martinez*, *Rivera*, and *Style*, this case presents a new *Bivens* context because *Bivens*, by its own terms, concerned "primarily rights of privacy." *Bivens*, 403 U.S. at 390. The Supreme Court has characterized the claim in *Bivens* as "a claim against FBI agents for handcuffing a man in his own home without a warrant." *Abbasi*, 137 S. Ct. at 1860. Plaintiff's case does not implicate privacy rights in any way.

In *Bivens*, multiple constitutional violations were alleged, amounting to a pattern of premeditated unlawful behavior by six law enforcement agents which included an unlawful search in violation of privacy interests and an arrest unsupported by probable cause. By way of contrast, Defendant took care to obtain an arrest warrant for Plaintiff, and courts have commented favorably on the practice of obtaining arrest warrants rather than merely arresting on probable cause. This is because "An arrest without a warrant bypasses the safeguards provided by an objective predetermination of probable cause, and substitutes instead the far less

---

[6] Other courts have reached a contrary conclusion, based on facts both similar to those in this case. *Bueno Diaz v. Mercurio*, 19 Civ. 1319 (AT), 2020 WL 1082482, at *2–5 (S.D.N.Y. Mar. 5, 2020)(finding *Bivens* available to an allegation of excessive force used during execution of arrest warrant); *Lehal v. Cent. Falls Det. Facility Corp.*, 13 Civ. 3923 (DF), 2019 WL 1447261, at *10–12 (S.D.N.Y. Mar. 15, 2019)(same); *Oliva v. United States*, EP-18-CV-15-FM, 2019 WL 136909, at *4 (W.D. Tex. Jan. 8, 2019).

9

reliable procedure of an after-the-event justification for the arrest . . ., too likely to be subtly influenced by the familiar shortcomings of hindsight judgment." *Beck v. Ohio*, 379 U.S. 89, 96, 85 S.Ct. 223, 228, 13 L.Ed.2d 142 (1964). Arresting officers may use some amount force to execute an arrest warrant without giving rise to a constitutional violation. Because the "[u]se of excessive force is an area of the law in which the result depends very much on the facts of each case," *Kisela v. Hughes*, ––– U.S. ––––, 138 S. Ct. 1148, 1153, 200 L. Ed. 2d 449 (2018) (internal quotations and citations omitted), the precise manner in which defendants may lawfully execute an arrest warrant is ill-suited for judicial guidance. See *Abbasi*, 137 S. Ct. at 1860 (suggesting examination of whether "judicial precedents provide a ... meaningful guide for official conduct"). Style v, 2020 WL 3055319, at *4. *Bivens* involved flagrantly unlawful conduct and the imposition of civil liability on officers who had abundant opportunity to assess the lawfulness of their conduct but who failed to do so. Here, Defendant obtained the legal process that verified his assessment of probable cause and the proposition is to subject him to personal liability based upon a split second decision about the amount of force necessary to execute a lawfully-obtained warrant. Here, unlike the defendants in *Bivens*, the United States has certified that Defendant was acting within the scope of his employment in effectuating Plaintiff's arrest, thus providing Plaintiff with an alternative remedial scheme.

### *ABBASI* COUNSELS AGAINST EXPANSION OF THE *BIVENS* REMEDY

When evaluating whether to extend *Bivens*, the question "is 'who should decide' whether to provide for a damages remedy, Congress or the courts?" *Abbasi*, 137 S.Ct. at 1857. The correct "answer most often will be Congress." *Id.* Notably Congress chose to make § 1983 available only to address conduct by individuals acting under color of state law. "It would be "anomalous to impute a judicially implied cause of action beyond the bounds Congress has delineated for a comparable express cause of action." *Mesa*, 140 S. Ct. at 747. The limited scope of § 1983 weighs against recognition of the *Bivens* claim at issue here.

Plaintiff has alternative avenues of relief, and when alternate remedies or processes exist, a *Bivens* remedy usually does not. *Abbasi*, 137 S. Ct. at 1863. The availability of the Federal Tort Claims Act ("FTCA") as a potential remedy for Plaintiff's claim alleging inappropriate force is also a special factor counseling against expanding *Bivens*. *See Oliveras v. Basile*, No. 16 CIV. 9619 (KPF), 2020 WL 906131, at *6 (S.D.N.Y. Feb. 25, 2020)(citing cases). While the FTCA generally exempts from its coverage claims arising out of assault and battery made against its employees, the FTCA has an exemption to this exception (known as the "law enforcement proviso"[7]) and permits permit recovery due to acts or omissions of investigative or law enforcement officers[8] of the United States Government arising out of assault, battery, false imprisonment, false arrest, abuse of process, and malicious prosecution. 28 U.S.C. § 2680(h). Thus, while § 2680(h) carves out an exception to the waiver of sovereign immunity with respect to the commission of certain enumerated intentional torts, the United States may still be liable for those torts when federal "investigative or law enforcement officers" commit them. Section 2680(h) defines an "investigative or law enforcement officer" as "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." Though the FTCA does not authorize suits for constitutional violations as such, see 28 U.S.C. 2679(b)(2)(A), the existence of a statutory remedy for the alleged underlying conduct constitutes an alternative avenue for redress, even if Congress has not authorized "complete relief" or relief for "the constitutional violation itself." *Schweiker v. Chilicky*, 487 U.S. 412, 425, 427 (1988). Because the FTCA creates an "alternative remedial structure" to address assault and battery claims, "that alone may limit the power of the Judiciary to infer a new *Bivens*

---

[7] See Act of Mar. 16, 1974, Pub. L. 93–253, § 2, 88 Stat. 50. The law enforcement proviso extends the waiver of sovereign immunity to claims for six intentional torts, including assault and battery, that are based on the "acts or omissions of investigative or law enforcement officers." § 2680(h). The amendment was passed in response to public outcry regarding federal narcotics officers engaging in abusive, illegal, and unconstitutional 'no-knock' raids in separate incidents in Collinsville, Illinois. S. Rep. No. 93-588, at 2 (1973).
[8] DEA agents are law enforcement officers authorized to execute searches and to make arrests. 21 U.S. Code § 878.

11

cause of action." *Abbasi*, 137 S. Ct. at 1858; *see Wilkie*, 551 U.S. at 550 (explaining that the existence of an "alternative, existing process" is a reason not to extend *Bivens*).

The Supreme Court frequently "loo[ks] to analogous statutes for guidance on the appropriate boundaries of judge-made causes of action." *Mesa*, 140 S. Ct. at 747. Potential remedies for those alleging assaultive police conduct are found in the federal criminal code. Title 18, United States Code, Section 242 makes it a crime for a person acting under color of any law to willfully deprive a person of a right or privilege protected by the Constitution or laws of the United States. For the purpose of Section 242, acts under "color of law" include acts not only done by federal, state, or local officials within their lawful authority, but also acts done beyond the bounds of that official's lawful authority, if the acts are done while the official is purporting to or pretending to act in the performance of his/her official duties. Individuals who feel that federal law enforcement officers have violated their civil rights may always seek criminal prosecution, and crime victim rights attach, making restitution, the right to confer with the prosecutor, and right to address the court throughout the proceedings, to include at sentencing. *See generally* 18 U.S.C. § 3771; 34 U.S. Code § 20141 (enumerating statutorily guaranteed victim rights). Neither in enacting § 241 (conspiracy against rights) or § 242 did Congress did provide for a private right of action for violation of civil rights. *Huston v. Slanina*, No. 12 C 4582, 2012 WL 4464301, at *2 (N.D. Ill. Sept. 24, 2012)(citing cases). Another analogous statute, Title 34 U.S.C. section 14141, prohibits government authorities or agents acting on their behalf from engaging in a "pattern or practice[9] of conduct by law enforcement officers ... that deprives persons of rights ...secured or protected by the Constitution or laws of the United States." Congress has extensively legislated in the civil rights area and has deliberately decided to provide some remedies but not others. *See Abbasi*, 137 S. Ct. at 1858.

---

[9] Formerly codified at 42 U.S.C. 14141.

"Congress's decision not to provide" the particular remedy that petitioner seeks "does not compel [the Court] to step into its shoes." *Mesa*, 140 S. Ct. at 750.

Additional remedies exist in the form of complaint processes which may be invoked to draw attention to police practices and to seek redress. *See* 28 CFR § 0.29c. https://oig.justice.gov/hotline/info.htm (both pertaining to the jurisdiction of the Department of Justice's Office of Inspector General[10]). Indeed, dating as far back as 2006, the Supreme Court recognized that, "Another development over the past half-century that deters civil-rights violations is the increasing professionalism of police forces[11], including a new emphasis on internal police discipline." *Hudson v. Michigan*, 547 U.S. 586, 598 (2006)(declining to make exclusionary rule applicable to failure to knock and announce prior to making entry pursuant to a search warrant). The *Hudson* court also noted that "Modern police forces are staffed with professionals; it is not credible to assert that internal discipline, which can limit successful careers, will not have a deterrent effect. There is also evidence that the increasing use of various forms of citizen review can enhance police accountability." *Id.*

Special factors counsel against creation of a *Bivens* remedy. Without limiting possible "special factors," *Abbasi* identified several factors that will frequently arise when determining whether to imply a *Bivens* remedy. *Abbasi*, 137 S. Ct. at 1858. Many of these common special factors counselling hesitation apply here. Because there is no statutory right of defense or indemnification for federal employees, federal agents sued in their individual capacities would be subject to discretionary and unreviewable defense and indemnification decisions made by the DOJ.

---

[10] DOJ's OIG is a statutorily created independent entity whose mission is to detect and deter waste, fraud, abuse, and misconduct in DOJ programs and personnel, and to promote economy and efficiency in those programs. The OIG investigates alleged violations of criminal and civil laws by DOJ employees. *See* Inspector General Act of 1978, as amended, 5 U.S.C.App. § 1 et seq.

11 See also Exec. Order No. 13684, Establishment of the President's Task Force on 21st Century Policing, 79 Fed. Reg. 76865 (Dec. 23, 2014) and the final report (https://cops.usdoj.gov/pdf/taskforce/taskforce_finalreport.pdf) for a thorough discussion of the multi-faceted issues involved in professionalizing the provision of police services to the community.

28 C.F.R. § 50.15. If defense and indemnification requests are denied, a federal employee would have to pay out-of- pocket to defend a lawsuit and satisfy a judgment on his own. The threat of a damages remedy against federal officials can impact more than just an individual's wallet. Even the threat of personal liability can have drastic social consequences, including making employees hesitant to act in high risk or uncertain situations. *See Anderson v. Creighton*, 483 U.S. 635, 638 (1987) ("[P]ermitting damages suits against government officials can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties."); *Harlow v. Fitzgerald*, 457 U.S. 800, 814 (1982) ("These social costs include the expenses of litigation, the diversion of official energy from pressing public issues, and the deterrence of able citizens from acceptance of public office," as well as "the danger that fear of being sued will 'dampen the ardor of all but the most resolute, or the most irresponsible [public officials], in the unflinching discharge of their duties.'") Congress recognized the adverse impact of personal capacity lawsuits against federal employees when it enacted the Westfall Act in response to the Supreme Court's decision in *Westfall v. Erwin*, 484 U.S. 292 (1988) which eroded the common law tort immunity previously available to Federal employees by adding a "discretionary function" requirement, discrete from the scope-of-employment test, as a criterion for a federal officer's personal immunity. In enacting the Westfall Act, Congress wanted the employee's personal immunity to turn solely on a scope-of-employment inquiry. *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 418 (1995). In its findings in the Westfall Act, Congress concluded that that, "erosion of immunity of Federal employees from common law tort liability has created an immediate crisis involving the prospect of personal liability and the threat of protracted personal tort litigation for the entire Federal workforce." PL 100–694 (HR 4612), PL 100–694, November 18, 1988, 102 Stat 4563, § 2(a)(5) & (6) (declaration of findings and purpose by Congress). Congress also noted that, "The prospect of such liability will seriously undermine the morale and well-being of Federal employees, impede the ability of

agencies to carry out their missions, and diminish the vitality of the Federal Tort Claims Act as the proper remedy for Federal employee torts." *Id.* Congress intended the Westfall Act "to protect Federal employees from personal liability for common law torts committed within the scope of their employment, while providing persons injured by the common law torts of Federal employees with an appropriate remedy against the United States." *Id.* Notably, in enacting the Westfall Act, Congress failed to pass a law that either provided or precluded a *Bivens*-type remedy for violations of constitutional rights.

In sum, Congress had several opportunities to create a private right of action for violation of the Fourth Amendment by federal officers (most notably with the creation of § 1983 and most recently with the enactment of the pattern and practice statute in 1994) but declined to do so. The FTCA exists as an alternative remedy to address assaults and batteries by federal officers where the United States has certified that their actions were made within the scope of their employment, and DOJ employees are subject to a robust disciplinary scheme. It is irrelevant to a special factors analysis whether the laws currently on the books provide an adequate federal remedy for injuries; so long as the plaintiff has an avenue for some redress, bedrock principles of separation of powers foreclose judicial imposition of a new substantive liability. *Malesko*, 534 U.S. at 69.

## CONCLUSION

In *Abbasi*, the Supreme Court noted that it is possible that the Court would not have reached the same result if *Bivens* were decided today. *Abbasi*, 137 S.Ct. at 1856. In their concurring opinion in *Mesa*, Justices Thomas and Gorsuch suggested that the Court reevaluate its continued recognition of even a limited form of the *Bivens* doctrine to ensure that the Court is not "perpetuat[ing] a usurpation of the legislative power," *Mesa*, 140 S. Ct. at 750. In considering whether this case presents a different context than *Bivens*, treating all search-and-seizure cases the same would contradict the Supreme Court's direction that a context can be new even if it involves

the same constitutional right as an existing case. *See Abbasi*, 137 S. Ct. at 1859. This case does present a new context, and the *Bivens* remedy should not be extended to cover it. Plaintiff has an alternative remedy in the form of an FTCA action and Count 1 should be dismissed.

STEVEN D. WEINHOEFT
United States Attorney

*/s/ Suzanne M. Garrison*
SUZANNE M. GARRISON
Assistant United States Attorney
United States Attorney's Office
Nine Executive Drive
Fairview Heights, Illinois 62208-1344
Phone:  (618) 628-3700
Fax:    (618) 622-3810
E-mail: Suzanne.Garrison@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DONALD V. SNOWDEN, ) | |
| ) | |
| Plaintiff, ) | Case No. 19-cv-01322-JPG |
| ) | |
| vs. ) | |
| ) | |
| JEREMY HENNING, ) | |
| ) | |
| Defendant. ) | |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Southern District of Illinois and is a person of such age and discretion as to be competent to serve papers.

That on July 8, 2020, she served a copy of the attached

**DEFENDANT HENNING'S MOTION TO DISMISS COUNT 1 OF THE COMPLAINT FOR FAILURE TO STATE A CLAIM and MEMORANDUM IN SUPPORT**

by placing said copy in a postpaid envelope addressed to the person hereinafter named, at the place and address stated below, which is the last known addresses, and by depositing said envelopes and contents in the United States Mail at 331 Salem Place, Fairview Heights, Illinois 62208-1344.

Donald V. Snowden
JACKSON COUNTY JAIL
1001 Mulberry Street
Murphysboro , IL   62966

_____
Amy Leslie